UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JODY MICHAEL WAGNER,

        Plaintiff,

v.                                                             Case No. 23-CV-303

YANA PUSICH, *et al.*,

        Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Jody Michael Wagner, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Wagner sues Yana Pusich, Christopher Manthei, and Scott Kinnard for failure to protect in violation of his Eighth Amendment rights. The defendants move for summary judgment on Wagner's claim. (Docket # 44.) The parties have consented to the jurisdiction of a magistrate judge. (Docket # 6; Docket # 14.) For the reasons stated below, the defendants' motion for summary judgment is granted.

## FACTS

At all times relevant, Wagner was incarcerated at Waupun Correctional Institution. (Docket # 59, ¶ 1.) Beginning on October 19, 2022, Wagner and Alex Reyes were assigned as cellmates in the Northwest Cell Hall I-2. (Docket # 46, ¶ 2.) Wagner, who is 6'7" and 189 pounds, states that after rooming with Reyes, who is 5'4" and 150 pounds, he "became concerned for his health and safety to rise to such a level of degree that Wagner began to complain to the defendants about his cellmate." (Docket # 46, ¶ 5; Docket # 59, ¶ 4; Docket # 60, ¶ 5.)

Wagner asserts that Reyes "displayed several episodes of very violent, and erratic behavior, such as hitting himself, the wall, the sink, and throwing kicks and punching the shadows." (Docket # 59, ¶ 6.) He also states that Reyes was unsanitary, wore dirty clothes, and had recently tested positive for COVID-19. (*Id.*) Whenever food trays would arrive, Reyes would cough open-mouthed in the general direction of Wagner's food. (*Id.*, ¶ 7.) Wagner states he "wrote repeatedly to the Health Services Unit outlining and complaining about his cellmate's behavior and Wagner being subjected to these content risk [sic] every day." (*Id.*, ¶ 8.)

At some point—it is unclear from the record when—Wagner stopped Captain Scott Kinnard while he was performing rounds to tell him that he feared for his safety with Reyes as his cellmate. (Docket # 46, ¶ 16; Docket # 60, ¶ 16.) Kinnard allegedly told Wagner that he needed to "follow the chain of command and speak with the regular first shift Northwest Cell Hall Sergeant," Christopher Manthei. (Docket # 46, ¶ 17.) Wagner states he then complained to Manthei both in person and in writing but notes he does not have record of his written complaint because Manthei never responded. (Docket # 60, ¶ 15.)

After hearing no response, Wagner wrote to Security Director Yana Pusich, wherein he stated Reyes "has violent episodes, outbursts that makes me <u>scared for my own safety</u>! He would be eating or standing over in the corner in the back of the cell and just out of nowhere he starts throwing punches in the air and kicking the wall and striking his hands like from head level down across his knees really hard more than once." (Docket # 59-1 at 8) (emphasis in original). He further expressed concerns about Reyes's unhygienic practices, and his exposure to COVID-19. (*Id.* at 9.) He concludes stating, "So with my cellmate Reyes, he scares me, worries me, and is causing me to live on edge. I'm stressed out and not

sure if his behavior is directed towards me or what." (*Id.*) Pusich responded in writing, "If there was concern for your health, you would have been separated from your cellmate. At the moment, cough is not a reason to move." (*Id.* at 8.)

On November 28, 2022, Wagner wrote to "Kinkaid" stating that Reyes makes him fear for his safety. (Docket # 59-1 at 2.) He again describes Reyes' tendency to punch the air, kick the walls, and slam his hands against his knees. (*Id.*) He notes that he had previously written to the security director. (*Id.*) Wagner states that he meant to send this message to Kinnard but had his name wrong. (Docket # 60, ¶ 21.) Regardless, he did not get a response. (*Id.*)

On December 1, 2022, Reyes, standing on a folding chair, was looking through his personal items. (Docket # 59, ¶ 12.) Wagner was on bunk, and Reyes "passed gas essentially in Wagner's personal space and face." (*Id.*) Wagner told Reyes "to spray something or turn the fan up a speed." (*Id.*) Reyes did not respond, so Wagner reached to the end of his bunk to turn the fan speed up. (*Id.*) Reyes then turned and punched Wagner in the head. (*Id.*, ¶ 13.) Wager sustained a small cut above his eye. (Docket # 46, ¶¶ 41–43.) Wagner did not report the incident that day, and the incident was not reported until Captain Johnathan Pawlyk was informed that Wagner had a cut on his eye the next day, December 2, 2022. (*Id.*, ¶ 42.) Wagner was seen by the Health Services Unit and was given acetaminophen and an ice pack. (*Id.*, ¶ 47.) Wagner states that he still experiences pain on the side of his head and must take prescription medicine for the pain. (Docket # 60, ¶ 54.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual disputes does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Wagner claims that the defendants violated his Eighth Amendment rights by failing to protect him from Reyes' assault. "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To state

an Eighth Amendment claim against an official for failing to protect him, a plaintiff must allege "the official knows of and disregards an excessive risk of safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Wagner does not demonstrate that the defendants knew that a substantial risk of harm existed. To prevail on a failure to protect claim, plaintiffs must show "that there was a substantial risk beforehand that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). "'[A] deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in [a detention facility].'" *Id.* at 913 (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)).

Taking the facts in a light most favorable to Wagner, at most, he has demonstrated a general fear of Reyes' aggressive personality and unsanitary lifestyle. Wagner does not present any evidence of any threats that Reyes directed at him. Indeed, in his October 31, 2022, letter to Pusich, he states that he is "not sure if his behavior is directed at me or what." (Docket # 59-1 at 9.) Accepting as true that Wagner did speak to Manthei and Kinnard, Wagner still does not show that he told them he believed that he was in imminent danger of Reyes assaulting him. He expressed concerns about Reyes' behavior, which he described as violent, but stated it was directed towards the wall, sink, or Reyes himself. Wagner does not demonstrate that he told any of the defendants that Reyes ever directed the violent behavior towards him prior to December 1. A prisoner who tells "'jail officials only that he was afraid and that he wanted to be moved" fails to put those officials on notice of an actionable threat.'" *Dale*, 548 F.3d at 569 (quoting *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008)).

Also, the evidence shows that Reyes' reaction appeared to be in response to Wagner reaching to turn up the fan; there was no indication that the defendants knew Reyes would respond to a conflict physically. Further, Wagner's injuries were minor, to the point where he did not report the incident or the injury, and it was only discovered the next day by an officer on rounds. As such, Wagner has not shown a substantially serious harm rising to the level of a constitutional violation. "Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Dale*, 548 F.3d at 569. Summary judgment is granted in favor of the defendants.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argue that they are entitled to qualified immunity; however, because I find in favor of the defendants on the merits, I need not address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 44) is **GRANTED.**

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension

and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 12th day of August, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge